851 F.Supp. 815 (1994)
Ivan P. COGHLAN, Plaintiff,
v.
H.J. HEINZ COMPANY and Ore-Ida Foods, Inc., Defendants.
Civ. A. No. 3:92-CV-2461-X.
United States District Court, N.D. Texas, Dallas Division.
May 3, 1994.
*816 Hal Keith Gillespie and David Kohlman Watsky, Gillespie Rozen & Tanner, Dallas, TX, for plaintiff.
Kelly Akins, William Jerome Clay, Julia S. Mandala, Gardere & Wynne, Dallas, TX, Alan M. Koral, and Neil A. Capobianco, Vedder Price Kaufman Kammholz & Day, New York City, for defendants.
Harlan A. Martin, Mediator, pro se.

MEMORANDUM OPINION AND ORDER
KENDALL, District Judge.
NOW before the Court are H.J. Heinz Company's Motion to Strike Plaintiff's Demand for Compensatory and Punitive Damages and to Dismiss Plaintiff's Claim for Disability Discrimination or Alternatively for Summary Judgment, filed on October 29, 1993. Having reviewed these materials, the Court concludes that Defendant's motion should be considered as one for summary judgment. Having carefully considered these filed materials, the summary judgment evidence and the applicable law, the Court concludes that Defendant's motion should be, and hereby is, GRANTED in part and DENIED in part.
This is an employment discrimination case. Plaintiff, who was fifty-three when he filed this suit, worked for Defendant Heinz from the summer of 1966 until April 30, 1992. Before termination, he worked as regional manager of grocery specialty sales. Plaintiff was supposedly let go because of a consolidation of the company. However, he alleges that younger, less experienced and less qualified employees were favorably treated over him. Plaintiff is also a long-term, insulin dependent diabetic. He asserts that employees who were not similarly situated fared better than he did in the consolidation.
After his termination, Plaintiff interviewed with Defendant Ore-Ida on August 19, 1992 for the position of Texas regional grocery sales manager. Three days later, he received a rejection letter stating that another candidate whose qualifications more closely matched the position's requirements had been selected. However, Plaintiff alleges that a younger, less experienced candidate was selected for the position. Also, during the interview the fact of his being a diabetic surfaced, although the parties dispute how the issue came up.
Based on these facts, Plaintiff asserts causes of action under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, (ADEA), the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, (ADA), and the Texas Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. art. 5221k (TCHRA). Defendant's motion attacks Plaintiff's claims for compensatory and punitive damages under the TCHRA and ADEA and also argues that Plaintiff lacks a disability cognizable under the TCHRA. Plaintiff does not dispute the correctness of Defendant's argument regarding recovery of compensatory and punitive damages under the ADEA. (Pl.'s Resp. at 2 n. 2.) Consequently, the only issues remaining in the instant motion arise under the TCHRA.
Federal courts adjudicate motions for summary judgment under a familiar standard: The movant must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. Slaughter v. Southern Talc Co., 949 F.2d 167, 170 (5th Cir.1991). With this gauge in mind, the Court first addresses Defendant's concerns with Plaintiff's alleged disability under the TCHRA and then turns to Defendant's argument regarding the recovery of punitive and compensatory damages under that act.
Defendant relies extensively on a decision of the Supreme Court of Texas in its argument that Plaintiff does not have a disability under the TCHRA. In considering the plaintiff's status as "handicapped" under the TCHRA, the court in Chevron Corporation v. Redmon, 745 S.W.2d 314 (Tex.1987) observed the following:
A review of the statutes and the legislative history of this Act reveals that the legislature was concerned with protecting persons with impairments of an incapacitating nature. Furthermore, the legislature obviously chose not to employ the definition of "handicap" in the federal Rehabilitation Act, 29 U.S.C. § 701-796i. In *817 fact, the legislature did not even refer to that Act in section 1.02 describing the purposes of the Act.
Id. at 317-18. The court recognized the decisions of other state courts considering similar issues, and noted that an Illinois court held that the test for whether a person is handicapped is whether the person's disability is generally perceived as one severely limiting him in performing work-related functions. Id. at 318. The court concluded thus:
We believe the same reasoning applies in this case. While under article 5221k, [i.e. TCHRA] a person may not sue if his handicap impairs his ability to do that particular job, in order for a disability to be considered a handicap in the first place it must be one which is generally perceived as severely limiting him in performing work-related functions in general.
Id. The U.S. Court of Appeals for the Fifth Circuit has recognized the Texas Supreme Court's narrow construction, stating that Redmon adopts "a very restrictive definition of `handicap' for purposes of the Texas Commission on Human Rights Act." Chandler v. City of Dallas, 2 F.3d 1385, 1397 (5th Cir. 1993).
Defendant casts Plaintiff's diabetes as insufficiently impairing to bring him within the TCHRA, under Redmon's formulation. Defendant states that "Plaintiff himself testified that his blood sugar levels are under control, that he only once had an episode in which he lost consciousness, that his diabetes never interfered with his broker relationships, that he is not disabled and wanted to work, and that his treating physician told him that his medical history did not prohibit plaintiff from working." (H.J. Heinz Company's Mem. Authorities at 14) (citations omitted.) In light of Redmon, these assertions do not bode well for Plaintiff's TCHRA claim.
Plaintiff, however, argues that the TCHRA's definition of "disability" has strong affinities with the federal ADA and the Rehabilitation Act of 1973. Because the Supreme Court of Texas has noted that Article 5221k of the TCHRA is to be construed in conformance with its federal counterpart according to Plaintiff, this Court should deny Defendant's motion. The Court has already denied Defendant Ore-Ida's motion for summary judgment on the ADA issue. See Coghlan v. H.J. Heinz Co., 851 F.Supp. 808, (N.D.Tex.1994) (Coghlan I.)
Plaintiff also persuasively distinguishes Redmon by demonstrating crucial differences between the law construed in Redmon and amendments to the TCHRA occurring in 1989.[1] The Redmon court considered an earlier codification of the TCHRA, article 4419e, and made the following observation:
The wording of [a policy provision in the 1977 amendments] contrasting the "handicapped" with the "able-bodied," reveals that when employment discrimination based on handicap was added to the Act, the legislature was concerned with serious impairments.
When enacting article 5221k, the legislature chose to define "handicapped person" identically to the definition in article 4419e and the Human Resources Code....
Redmon, 745 S.W.2d at 317. Thus began the analysis that ended as quoted above, with the Texas Supreme Court recognizing that the Texas legislature had ignored the federal Rehabilitation Act on the issue of "handicap." However, in the 1989 amendments to the TCHRA, the legislature provided a definition of "disability" meaning "a mental or physical impairment that substantially limits at least one major life activity or a record of such a mental or physical impairment." This language changed "handicap" to "disability" and changed the focus from article 4419e. Instead, *818 the amendment virtually tracks the ADA's definition of "disability," which means with respect to an individual (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded has having such an impairment. 42 U.S.C. § 12102(2). The ADA's definition, in turn, derives from the Rehabilitation Act. Plaintiff also points out that the Supreme Court of Texas in Caballero v. Central Power and Light Company, 858 S.W.2d 359 (Tex.1993) considered the United States Supreme Court's decision in School Board of Nassau County v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), which construed the Rehabilitation Act. The Texas Supreme Court did so while considering the TCHRA. Plaintiff's argument is well taken. Although Redmon might retard Plaintiff's cause, it construes language that the legislature has since amended, and it is the amended TCHRA that applies to Plaintiff's claim. Construing the similar ADA language, this Court denied Ore-Ida's motion for summary judgment on the disability issue in Coghlan I. There appears no persuasive reason to do otherwise here.
Defendant's next salvo attacks Plaintiff's claim for compensatory and punitive damages under the TCHRA. Defendant contends that the TCHRA's language expressly limits recovery to equitable relief and asserts that because the legislature amended the TCHRA in 1993 to provide for recovery of compensatory and punitive damages, the recovery of such legal relief under the pre-'93 amendment TCHRA would be counterintuitive. The Court finds one of the cases over which the parties spar dispositive of the legal/equitable dilemma. Defendant relies on Central Power & Light Company v. Caballero, 804 S.W.2d 534 (Tex.App.  San Antonio 1990) for the proposition that the TCHRA permits a court to award equitable relief only and does not allow any legal relief such as compensatory or punitive damages. However, in reversing the San Antonio court of appeals, the Supreme Court of Texas expressly stated the following:
We decline to adopt the court of appeals' reading of TCHRA, and hold that once a litigant is authorized to proceed in court under the statute, he is entitled to a jury trial for damages.

Caballero v. Central Power and Light Company, 858 S.W.2d 359, 360 (Tex.1993) (emphasis added, footnote omitted). Defendant maintains that the court reserved the issue of whether damages are recoverable under the TCHRA. The quoted language above demonstrates the contrary, though. The court did, however, decline to pass on sufficiency of evidence points and on the propriety of the plaintiff's "damages issues," which this Court takes to mean the plaintiff's issues submitted to the jury. See id. at 361 nn. 6-7. Defendant's argument regarding the '93 amendments is alluring. Yet the Caballero court, undaunted by the absence of clear statutory direction regarding the availability of legal relief, construed pre-'89 amendment TCHRA language and concluded as quoted above. This Court reads the Texas Supreme Court's opinion as allowing the recovery of damages for TCHRA actions like plaintiff's, begun before the 1993 amendments to that act.
This determination may not foreclose all doubt regarding the possibility of recovering punitive damages under the TCHRA, though. Granted, the TCHRA language over which the parties struggle appears to contemplate equitable recovery, and it certainly does; the question though is whether that relief is exclusively equitable. On this point, the language in Caballero appears to leave no room for interpretation: "We ... hold that ... a litigant ... is entitled to a jury trial for damages." Once this conclusion is certain, that punitive damages are available does not seem too distant a conclusion. In Azar Nut Company v. Caille, 734 S.W.2d 667 (Tex. 1987), the Supreme Court of Texas considered whether punitive damages were available under the Texas Workmens' Compensation Act. The court particularly focused on language in the act stating that "an employer who `violates any provision of section 1 of this Act shall be liable for reasonable damages suffered by the employee as a result of the violation.'" Id. at 668 (emphasis in original). The court considered legislative history and noted that although the original bill only spoke in terms of "damages," the law as *819 enacted was amended to "reasonable damages." The court then stated as follows:
The term "damages" standing apart seems to be an unrestricted standard which would allow punitive damages, and such a definition was conceded by petitioner upon oral argument in this court. Thus, the question becomes whether by adding the word "reasonable" to the bill, the legislature intended to preclude punitive damages in this situation. We hold that it did not.
Id. at 669. This Court does not even have the word "reasonable" to ponder. The Court concludes, then, that punitive damages are available under Plaintiff's TCHRA action.
Defendant's motion regarding the unavailability of compensatory and punitive damages under the ADEA is granted. The motion in all other regards is denied.
SO ORDERED.
NOTES
[1] The statutory structure underpinning Plaintiff's claim apparently came into existence in 1969 and was codified at TEX.REV.CIV.STAT.ANN. art. 4419e. This enactment received an employment discrimination provision in 1975. This law was repealed and recodified in the Texas Human Resources Code, at TEX.HUMAN RES.CODE ANN. § 121.001 and following, which in turn was repealed and recodified as the Texas Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. art. 5221k, under which Plaintiff sues. That provision was also repealed effective September 1, 1993 and recodified in the LABOR CODE. However, the latest recodification provides that the repealed law is carried in effect for complaints filed before September 1, 1993.