United States Court of Appeals,

Fifth Circuit.

No. 96-20287.

Alfred WILLIAMS, Plaintiff-Appellant,

v.

TIME WARNER OPERATION, INC., Defendant-Appellee.

Oct. 25, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and SMITH and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Alfred Williams appeals a summary judgment regarding his racial discrimination claim under title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* and 42 U.S.C. § 1981, in favor of Time Warner Operation, Inc. ("Time Warner"). Concluding that Williams has put forth sufficient evidence to create a genuine issue of material fact as to whether Time Warner's proffered justification for its failure to promote Williams was pretextual, we reverse and remand.

I.

Williams, a black male, was employed by Time Warner as an Installation/Repair Technician when he sought promotion to the position of Preventive Maintenance Technician ("PM Tech"). After the candidates had been reviewed initially by Chuck Stubblefield, the Time Warner employee responsible for making the promotion decisions, Williams and two white males were selected as finalists. Of the seven criteria employed by Stubblefield in making his decision—interview, longevity, experience and education, supervisor's recommendation, performance evaluation, corrective actions, and attendance—Williams scored lower than both of the other two i n attendance and supervisory recommendation only.

It is the supervisory recommendation that forms the crux of Williams's case. Randy Waller, Williams's immediate supervisor in his then-current Installation/Repair Technician job, allegedly gave Williams a poor oral recommendation for the promotion, and Stubblefield avers that this

recommendation was pivotal in his decision not to award the promotion to Williams.[1]  Although he does not allege that Waller is a racist, Williams contends that Stubblefield is a racist and that Waller, because of his loyalty to the company, lied about Williams's qualifications in order to cover up Stubblefield's racially-motivated decision not to promote Williams.

Williams appealed his adverse decision through Time Warner's "Open Door" procedure, in which the decision was explained to him by Stubblefield and Stubblefield's superior.  Williams then had a hearing before a committee comprised of managers and employees of Time Warner, one of whom was selected by Williams and two of whom were black.  The committee recommended no change in the decision.

Williams filed suit, alleging that he had been rejected because of his race and seeking damages under title VII and the Texas Commission on Human Rights Act, TEX.CIV.STAT.ANN. art. 5221k (Vernon 1994) (now codified as TEX.LAB.CODE ANN. §§ 21.001 *et seq.*).  He also alleged that the failure to promote constituted intentional infliction of emotional distress.  The district court granted Time Warner's motion for summary judgment on all claims.  Williams appeals the decision as to all claims but the art. 5221k action.

## II.

We review a grant of summary judgment *de novo.  See Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  We construe all evidence in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes.  *See Lindsey v. Prive Corp.,* 987 F.2d 324, 327 n. 14 (5th Cir.1993).

## III.

---

[1]Specifically, Stubblefield's affidavit—which appears as part of the summary judgment record—says that Waller "did not give [Williams] a good recommendation [,] felt that Williams should not be promoted [, and] told me that Williams continually complained about work assignments and did not accept supervisory authority well."

The parties do not contest the proper allocation of burdens of production in employment discrimination cases: First, the plaintiff must establish a *prima facie* case of discrimination; second, if he is so successful, the defendant must articulate some legitimate, nondiscriminatory reason for the challenged employment action; and third, if the defendant is so successful, the inference of discrimination raised by the *prima facie* case disappears, and the plaintiff then must prove, by a preponderance of the evidence, both that the defendant's articulated reason is false and that the defendant intentionally discriminated. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2748-49, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-55, 101 S.Ct. 1089, 1093-1094, 67 L.Ed.2d 207 (1981). If the defendant has rebutted successfully the presumption created by the *prima facie* case—that plaintiff's rejection was racially motivated—the factual inquiry proceeds to a new level of specificity. *Id.* at 255, 101 S.Ct. at 1094.

IV.

As Time Warner stipulated that Williams had established a *prima facie* case, we examine Time Warner's reason for Williams's rejection—Randy Waller's unfavorable oral recommendation of Williams for the promotion. This explanation, if believed, would support a finding that the decision not to promote Williams was legitimate and non-discriminatory; Time Warner thus has satisfied its burden of production. Time Warner need not persuade us that it actually was motivated by this reason; it is sufficient that it has raised a genuine issue of fact regarding whether it unlawfully rejected Williams. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

We now turn to the third prong of the *Burdine* test—whether Time Warner intentionally discriminated against Williams on the basis of race. Williams may satisfy his summary judgment burden on the third prong by coming forward either with direct evidence of discriminatory intent or with circumstantial evidence demonstrating that Time Warner's articulated rationale was pretextual. *See LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 449 (5th Cir.1996). We recently have articulated the test as follows:

> [A] jury issue will be presented and a plaintiff can avoid summary judgment ... if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains. The employer, of course,

will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

*Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 995 (5th Cir.1996) (en banc).

The gravamen of William's pretext argument is that Waller, in order to protect his job, agreed to state that he gave a negative recommendation to conceal Stubblefield's discriminatory animus. In effect, Williams argues that Stubblefield made a race-based decision and then used Waller to cover it up. In support of this argument, Williams notes that Waller gave him a positive, written performance appraisal only four months prior to the poor oral recommendation, in which prior evaluation Waller noted, among other things, that Williams "consistently excels," "is a team player," and "can be depended on to complete all work assigned to him with minimal supervision." In addition, one month *following* Waller's negative oral recommendation, Waller gave Williams another positive written appraisal, observing that Williams "is able to receive assignments from several people, judge or resolves the priorities and still maintain good working relationships with those involved," and "has a positive impact on the morale of my department." According to Williams, "The only way to reconcile these statements [the two positive performance appraisals and the poor supervisory recommendation] is to determine that one is a lie."

Time Warner counters that it uses both performance appraisals and supervisory recommendations in making promotion decisions for the exact reason that Williams offers as suspect—because often they are at odds with each other. It is perfectly plausible, Time Warner argues, that Waller believed that Williams was performing well in his current job and so reflected in the performance appraisals, and that at the same time Waller also believed that Williams was not capable of performing the responsibilities associated with the job for which Williams sought promotion.

It is uncontested, however, that, when Williams previously had sought and received a promotion to the same position of PM Tech,[2] Waller had written him a favorable recommendation. Waller reportedly was unable to recommend Williams for the promotion this time because "Alfred

---

[2]Williams held this position for 31/2 years before leaving Time Warner to continue his education.

did not like to be told what to do ... he continually complained about work assignments and tried to undermine his authority." Interestingly, Richard Cicatello, a white male who was selected for one of the promotion positions, had been disciplined formally within the past year on the same charge.[3]

Williams also supports his pretext argument by noting that he previously had been employed as a PM Tech—the position for which he was re-applying in the instant case—for 31/2 years and had worked directly for Stubblefield for 11/2 of those years. Stubblefield testified in his deposition that Williams had performed well in this job. Williams posits that, given the fact that Stubblefield had direct, personal knowledge of Williams's performance in the very job for which he was re-applying, Stubblefield's proffered justification for the decision (Waller's negative supervisory recommendation) may have been pretextual. That is, given Stubblefield's past satisfactory experience with Williams, his contention that Waller's supervisory recommendation was dispositive is suspect.

Finally, Williams submits, as evidence of pretext, the fact that he scored lower than the two white candidates in only two of the seven categories employed by Time Warner—attendance[4] and supervisory recommendation—and scored the highest in the performance evaluation category. Stubblefield ranked the supervisory recommendation and performance evaluation categories equally, and thus Williams argues that Stubblefield's insistence that Waller's single negative, oral supervisory recommendation so overshadowed his multiple positive performance evaluations is disingenuous at best. Even assuming that such were the case, Waller notes further that Stubblefield's ranking of these two categories equally as fourth in importance relative to the other criteria, and Williams's excellent performance in the top three categories, legitimately question the sincerity of Stubblefield's proffered justification.

When viewed in total, we believe that Williams's evidence creates a genuine issue of material fact concerning whether Stubblefield in fact relied upon Waller's negative supervisory recommendation or instead upon unlawful, discriminatory animus in failing to promote Williams. We

---

[3]Stubblefield alleges that, at the time he made his promotion decisions, he was unaware that such disciplinary action had been taken against Cicatello.

[4]Stubblefield himself noted that attendance was the least important criterion.

do not decide the merits of Williams's underlying claims, but note only that whether Stubblefield's decision was discriminatory will turn on the sufficiency of Williams's evidence and the credibility of the attesting parties, functions properly left to the fact finder and not to be resolved on summary judgment. This may be especially true where, as here, the critical negative evaluation is oral, and hence credibility is even more at issue.[5]

## V.

Williams next requests, for the first time on appeal, an enlargement of discovery to permit him to depose Waller. Williams did not file any affidavit to this effect as required by FED.R.CIV.P. 56(f), nor did he petition the district court for an enlargement of time or a continuance of the summary judgment motion pending further discovery. We refuse to review an argument that a party has failed to raise in response to a summary judgment motion. *See Gilley v. Protective Life Ins. Co.,* 17 F.3d 775, 781 n. 13 (5th Cir.1994) (citation omitted). Furthermore, because we reverse the summary judgment, Williams's request on appeal is moot. We express no view as to whether further discovery is appropriate on remand.

REVERSED and REMANDED.

---

[5]Because Williams has merely presented his intentional infliction of emotional distress claim for review without providing any attendant argument in his brief, he has abandoned that issue on appeal. *See Harris v. Plastics Mfg. Co.,* 617 F.2d 438, 440 (5th Cir.1980).